## BARTLETT et al. v. O'CONNOR et al.

### No. 15,399; April 19, 1894.

#### 36 Pac. 513.

Waters—Diverting from Another by Draining Marsh.—Where one, in draining a marsh from which a stream runs onto another's agricultural land, in connection wherewith it has been used for irri-

gating and domestic purposes from time immemorial, diverts the water intentionally and without benefit to himself, he will be enjoined.

APPEAL from Superior Court, Mendocino County; R. McGarvey, Judge.

Suit by James Bartlett and others against Cornelius O'Connor and others for damages and an injunction. Judgment for plaintiffs. Defendants appeal. Affirmed.

J. M. Mannon for appellants; J. A. Cooper, J. Q. White and W. P. Thomas for respondents.

VANCLIEF, C.—Action to recover damages for diversion of water from an alleged spring and natural stream, and to enjoin the defendants perpetually from such diversion. Judgment passed for plaintiffs, enjoining the defendants as prayed for, and for costs, but without damages. The defendants appeal from the judgment, and from an order denying their motion for a new trial.

The material facts are as follows: In February, 1891, the plaintiffs, being the owners of a large tract of land in Mendocino county, sold and conveyed a parcel thereof (one hundred and thirty acres) to the state of California, to be occupied and used as the site for the Mendocino State Asylum for the Insane. Upon the parcel thus sold to the state is a marsh or bog of about three acres, out of which arises a considerable quantity of water, which runs off from the west side of the bog, through a natural channel, across plaintiffs' adjoining land. The channel is hardly perceptible within the marshy land, but becomes distinct at the western edge thereof, and thence so continues through plaintiffs' land. The court found that at the head of the natural channel is "a living spring of water, . . . . and that at the place, and in the vicinity of said spring, a large quantity of water rises and forms the source of a living stream of water; that the said water from said spring flows off in a natural, well-defined channel, through and over the lands of plaintiffs, and has been so wont to flow onto and over the lands of the plaintiffs in a natural and well-defined channel from time immemorial"; and that plaintiffs' lands are agricultural lands; and that the said water flowing

through said natural channel has been used by plaintiffs for domestic purposes and for irrigation continuously for more than twenty years, until diverted by defendants in 1891. The court further found that in 1891 "the defendants willfully, and for the express purpose of drawing off the water that formed the spring, being the source of said natural stream, and for the purpose of drawing off said water and diverting it from said natural stream, cut an artificial ditch in and near said spring, and at a point before said water reaches the lands of the plaintiffs, and turned said water into said ditch, and diverted it from its channel and said ditch and away from the stream in which it formerly flowed, so as to greatly diminish the quantity of water so flowing from said natural stream through and over the lands of the plaintiffs; and the defendants threaten to continue, and will unless restrained by this court continue, to divert said water from said natural stream and from the spring, the source of said natural stream, so as to diminish the natural flow of water from said stream, to the great and irreparable injury of plaintiffs.'' It is further found that the ditch dug by defendants is on the land purchased by the state from the plaintiffs, and the defendants were directors of said state asylum at the time they dug said ditch. The defendants testified that the water diverted through the ditch was not used or intended to be used for any purpose, and that the sole object of the diversion was to drain and reclaim the land for the purpose of cultivating the same. In answer to this the plaintiffs proved, and the court found, that, if the object was merely to drain the marsh, it could have been accomplished at much less expense by deepening the natural channel and outlet, in which there is a fall of eighteen inches in the first sixty feet from the head, in the first one hundred and thirty feet a fall of three feet, in the first three hundred feet a fall of four and one-half feet, and in the first five hundred feet a fall of six feet and five inches; whereas, in the first four hundred feet on the line of the ditch dug by defendants there is no fall. The head of the ditch dug by defendants is between twenty-five and thirty feet distant from the head of the natural channel, at which point it is three feet deep; and at a distance of four hundred feet from that point it is from five to six feet deep. Then, connecting with the head of the ditch, at right angles therewith, is a ditch about

thirty-four feet long, and another of the same length, and parallel therewith, about fourteen feet therefrom, the natural effect of which is to divert water from the natural channel. These measurements were made and testified to by a surveyor, and were not disputed; so that the finding of the court that the object—at least one object—of the defendants was to divert the water from the natural channel and away from the plaintiffs' land by considerable unnecessary labor and expense if their only object was to drain the land, is amply justified by the evidence. And although the court, in its findings, did not use the word "malice," yet it substantially found that the defendants intentionally, unnecessarily, and without benefit to themselves or others diverted the water to the injury of the plaintiffs. This the law characterizes as a malicious injury. Conceding that defendants were entitled to drain the land for the purpose of cultivating it, yet if, without inconvenience or extra expense, they could have adopted a mode or means of drainage not injurious to others, they had no right to adopt a mode which was not only injurious to plaintiffs, but intentionally so, as found by the court. In view of this conclusion it becomes necessary to consider the question principally argued by counsel, namely whether the defendants diverted only such water as percolated through their own land or that of their principal, the state. I think the judgment and order should be affirmed.

We concur: Temple, C.; Haynes, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.